## Smith et al. v. Smith.

November 19, 1946.

J. W. Clements for appellants.

R. Davis McAfee for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing in part, affirming in part.

The appellant, Blanche Smith, and the appellee, Edgar Smith, were married in 1941. He was then 50 years of age and she was 38. Both parties had been married previously and each had a daughter. Mrs. Smith's daughter, who was approximately 14 years of age at the time of the marriage, made her home with the couple in a house which Mr. Smith had purchased in Louisville. Shortly after the marriage Mrs. Smith's father died and she made the statement that, if she had known her father was going to die, she would not have remarried, but would have made her home with her mother. Trouble started about that time and conditions grew steadily worse until Mr. Smith instituted this action for divorce in January, 1944, on the charge of cruel and inhuman treatment. Mrs. Smith first sought a divorce from bed and board, but after the proof was in she sought a divorce on the basis of technical abandonment.

The principal difficulty seems to have started in May, 1942, when Mr. Smith received a letter from a nephew whom he had raised and who was serving in the Marines. Mrs. Smith opened the letter before giving it to her husband and she took exception to some of the statements made therein, and wholly without cause, as we read the letter. The objectionable part follows:

"I'm embarrassed but I've forgotten your wife's name and also the little girl's, but tell them to write to me too if they will, cause I'd sure like to hear from them. I didn't get to know them very well and for that I regret. I really think they are nice people and I have no prejudice toward them as Granny did at first, she doesn't feel that way now, and mother never did. Of course you and I know that no one will or ever can fill the shoes left by Aunty—I sincerely hope however that your wife now is just what you want, you seemed to think so when you spoke to me that Sunday morning before I left."

The couple were not on speaking terms for several months prior to the institution of the action, though they continued to live in the same house and sleep in the same bed until the day the summons was issued. Mr. Smith occupied a room in the home for several months thereafter. However, they did not cohabit after June, 1943.

Each party attempted to put the blame on the other for this situation. We gather from the briefs that the oral testimony heard before the chancellor tended to show that Mrs. Smith said her husband was more or less impotent, and he said she made critical comparisons between him and her former husband on intimate matters. Mr. Smith's testimony showed that his wife, who worked most of the time they were living together, was cruel and indifferent toward him, was constantly nagging and refused to perform the ordinary duties of a housewife. On the other hand, her testimony was to the effect that her husband was totally indifferent toward her, was stingy and failed to provide the necessary clothing and foodstuffs. The record shows, however, that Mr. Smith did most of the purchasing of groceries, and we find a dearth of evidence supporting the charge that he did not buy necessary food for the family. Mrs. Smith's daughter and Mr. Smith seem to have been on very friendly terms at first. She said he gave her an allowance and purchased some clothing for her; and it was she who prevailed on her mother to let Mr. Smith have the car keys to go and meet his nephew when he was returning from the Marines. Later, however, she took the side of her mother and rarely spoke to Mr. Smith.

A sizeable record is made up of testimony supporting each party's complaints, wherein there are detailed recitations of bickerings, quarrels and outbursts of temper. No useful purpose would be served by incorporating this evidence herein. Unquestionably, the state of affairs in the Smith household was such that it would be impossible for the parties to live together peaceably as man and wife.

Mrs. Smith had an estate valued between $6000 and $6500 when this record was made up in 1944. Mr. Smith was then making approximately $3600 a year and he owned two pieces of property worth between $15,000 and $20,000. Of course, as indicated in the appellants' brief, the properties would be worth considerably more under present real estate values.

The action was first submitted to a special commissioner, who, after hearing the evidence, was very reluctant to make a recommendation, but finally stated it was his view that Mr. Smith had failed to make out his case

and was therefore not entitled to a divorce, but that Mrs. Smith was entitled to one from bed and board. The chancellor heard additional proof orally and sustained Mr. Smith's exceptions to the commissioner's report and overruled those of Mrs. Smith. On this appeal Mrs. Smith is insisting she was entitled to a divorce on the ground of abandonment, or at least to a divorce from bed and board; that she was entitled to alimony; and that she should recover her costs and attorney's fee which were disallowed. The commissioner had recommended a $250 fee for Mrs. Smith's attorney, but this was not allowed. The attorney is a party to this appeal.

We have examined the record carefully and have reached the conclusion that the chancellor properly awarded Mr. Smith a divorce. It seems to us that Mrs. Smith's attitude toward Mr. Smith's nephew and other relatives of his former wife was wholly unwarranted. Furthermore, we can find no basis for the charge that Mr. Smith was merely looking for someone to keep house for him when he married Mrs. Smith. He bought a nice home and seems to have been a good provider. Since we have reached the conclusion that Mr. Smith was properly awarded a divorce, Mrs. Smith was not entitled to any alimony.

We have reached a different view, however, in regard to the costs and the fee for Mrs. Smith's attorney. We have noted that she has a small estate and she may or may not be working at present, but since her estate is not a large one we believe the costs and the $250 attorney's fee recommended by the commissioner should be paid by Mr. Smith and we so adjudge. Therefore, we reverse the judgment on that phase of the case and affirm it in all other respects.